IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

RICK THOMPSON                                                                                    PLAINTIFF

V.                                           NO. 15-2164

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration                      DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Rick Thompson, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff originally brought his claims for DIB and SSI on May 18, 2010, alleging an inability to work since February 27, 2008, due to hand and arm numbness, nerve damage, severe neck pain, and overall pain. (Doc. 14, pgs.137-143, 156, 178). After a hearing on the matter, on August 1, 2011, the ALJ entered his decision denying Plaintiff's request for benefits. (Doc. 14, pgs. 16-30). On November 2, 2013, the undersigned entered a Report and Recommendation, reversing the ALJ's decision. (Doc. 14, p. 386). On December 12, 2013, United States District Judge P. K. Holmes, III, adopted the Report and Recommendation,

1

instructing the ALJ to more fully and fairly develop the record regarding Plaintiff's alleged carpal tunnel syndrome. (Doc. 14, pgs. 385-391). On July 10, 2014, the Appeals Council remanded the matter to the ALJ, pursuant to the Court's order. (Doc. 14, pgs. 392-394). In addition, Plaintiff filed a subsequent claim for Title II benefits on April 10, 2013, which the ALJ consolidated with the present claims for adjudication. (Doc. 14, p. 289). An administrative hearing was held on January 28, 2015, at which Plaintiff appeared with counsel and testified. (Doc. 14, pgs. 331-361).

By written decision dated June 18, 2015, the ALJ found that for purposes of the DIB claim, Plaintiff met the insured status requirements of the Act through December 31, 2013. (Doc. 14, p. 291). The ALJ also found that since the alleged onset date of disability, February 28, 2008, Plaintiff had the following severe impairment – carpal tunnel syndrome. (Doc. 14, p. 291). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Doc. 14, p. 292). The ALJ found as follows:

> Prior to January 7, 2014, the date the claimant became disabled, the claimant had the RFC to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can perform frequent (rather than constant) rapid and repetitive flexion and extension of his bilateral wrists.
>
> Beginning on January 7, 2014, the claimant has the RFC to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can perform less than occasional reaching, handling and fingering.

(Doc. 14, pgs. 292-294). With the help of the vocational expert (VE), the ALJ determined as follows:

> Prior to January 7, 2014, the claimant was capable of performing past relevant work as a warehouse manager, …, which is light, skilled work, and as an inventory management specialist, …, which is light, skilled work. This work

> did not require the performance of work-related activities precluded by the claimant's residual functional capacity.
>
> Beginning on January 7, 2014, the claimant's RFC has prevented the claimant from being able to perform past relevant work as his past relevant work exceeds his current RFC assessment.

(Doc. 14, p. 296). The ALJ concluded that Plaintiff was an individual closely approaching advanced age on January 7, 2014, the established disability onset date, and that since January 7, 2014, considering Plaintiff's age, education, work experience, and RFC, there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Doc. 14, p. 297). The ALJ also found that with respect to Plaintiff's DIB application, Plaintiff was not under a disability within the meaning of the Act at any time through December 31, 2013, the date last insured (Doc. 14, p. 297), and that with respect to Plaintiff's SSI application, Plaintiff has been disabled beginning on January 7, 2014. (Doc. 14, p. 298).

This case is now before the undersigned pursuant to the consent of the parties. (Doc. 5). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 12, 13).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.     Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. <u>Ramirez v. Barnhart</u>, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. <u>Edwards v. Barnhart</u>, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the

record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See

20 C.F.R. §§ 404.1520, 416.920  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC.  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);   20 C.F.R. § §404.1520, 416.920, abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §§ 404.1520, 416.920.

### III. Discussion:

Plaintiff raises the following issues in this matter:  1) Whether the ALJ erred in his RFC determination; 2) Whether the ALJ erred in his credibility analysis; and 3) Whether the ALJ failed to full develop the record. (Doc. 12).

#### A. Credibility Analysis:

Plaintiff argues that the ALJ did not perform a proper Polaski v. Heckler[1] analysis because he did not properly discuss why Plaintiff's subjective complaints were not entirely credible, and because he did not discuss the side effects of Plaintiff's medications. The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medications; and (5) functional restrictions. See id., at 1322.  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  Id.  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

---

[1] 739 F.2d 1320 (8th Cir. 1984).

In his decision, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible prior to January 7, 2014. (Doc. 14, p. 293). The ALJ discussed Plaintiff's daily activities, noting the 2010 and 2013 Function Reports. (Doc. 14, p. 293). The ALJ reported that in the 2010 Function Report, Plaintiff stated his wife helped him with dressing and shaving, that he mowed the yard about 10 or 15 minutes at a time, and helped with the garden every other day. He also reported that he went outside every day and was able to walk, go out alone, drive for short periods of time, shop in stores for groceries, and spent time with his grandchildren and others. In his 2013 Function Report, the ALJ noted that Plaintiff reported that the side effects of his medications made it difficult for him to function and that he slept only two or three hours a night, that he was able to perform personal care without assistance, do yard work with breaks, go out alone, walk, drive, manage personal finances, and spend time with others.

The ALJ also discussed the fact that x-rays of Plaintiff's lumbar spine taken in 2006 showed minimal degenerative changes, while those performed in 2014, indicated only minimal degenerative disc disease at the L4-5 and L5-S1 levels with good alignment and no severe arthritis. (Doc. 14, p. 292). In addition, on January 6, 2014, Dr. Ted Honghiran reported that x-rays of both of Plaintiff's wrists and hands were normal. (Doc. 14, p. 616).

Regarding possible side effects of medication, as early as April 14, 2009, Plaintiff reported to Dr. Michael Guyer that he was pain-free. (Doc. 14, p. 224). On March 4, 2010, Plaintiff reported to Dr. Guyer that he had "been feeling good" and had no new complaints. (Doc. 14, p. 217). On March 25, 2010, Dr. Jerry Stewart reported that Plaintiff had tolerated

the medications well. (Doc. 14, p. 216). On September 14, 2010, Plaintiff reported to Dr. Guyer that his blood pressure had been doing better on a different medication, and Plaintiff had no new problems or complaints. (Doc. 14, p. 243). By December 16, 2010, Plaintiff reported to Dr. Guyer that he was doing much better on his current medication, but was having some problems with depression and anxiety. (Doc. 14, p. 589). On January 18, 2011, Plaintiff reported to Dr. Guyer that he had been doing very well. (Doc. 14, p. 587). On February 17, 2011, Plaintiff reported to Dr. Guyer that he still had occasional low back pain, but was "currently relatively pain free." (Doc. 14, p. 586). On April 12, 2011, Plaintiff reported some mild fatigue. (Doc. 14, p. 584). On July 19, 2011, Plaintiff reported occasional pain in his shoulders and arm. (Doc. 14, p. 583).

On August 23, 2011, Dr. Guyer reported that Plaintiff was "doing very well on current medication." (Doc. 14, p. 581). On October 18, 2011, Plaintiff requested a change in medication to a cheaper one that he said caused some "mild stomach upset," but worked better. (Doc. 14, p. 579).

In 2012, Plaintiff saw Dr. Guyer one time, on April 17, 2012, and Dr. Jerry Stewart one time on October 23, 2012. (Doc. 14, pgs. 576-579). In April he was assessed with hypertension and backache, and in October, hypertension, esophageal reflux, hyperlipidemia and obesity. Nothing was reported about side effects of medications. In fact, Plaintiff was instructed to continue his current medical management. (Doc. 14, p. 579).

On August 15, 2013, Plaintiff saw Dr. John Urban, who reported that Plaintiff's GERD was good, his blood pressure was normotensive, his depression was stable, his arthritis was tolerable with his medications, that Plaintiff had bilateral carpal tunnel syndrome, but had not looked into surgery because he had no insurance, and had lower back

discomfort. (Doc. 14, p. 610). Dr. Urban also noted Plaintiff had musculoskeletal abnormalities. (Doc. 14, p. 613). On October 18, 2013, Dr. Urban reported that Plaintiff's carpal tunnel syndrome could be "bothersome" but he could not afford insurance. (Doc. 14, p. 607).

Although there were times during the relevant time period that Plaintiff had medication adjustments, there is very little evidence that Plaintiff suffered from adverse side effects from his medications, and when he did, the medications were changed. (Doc. 14, pgs. 221, 579). Accordingly, it was not error for the ALJ not to discuss in depth side effects of medications.

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's credibility findings.

### B. RFC Determination:

Plaintiff argues that at issue in this case is the Plaintiff's RFC prior to the expiration of the date last insured, which is December 31, 2013, and that the ALJ erred by not finding Plaintiff's RFC to be further limited than the one assigned to Plaintiff before January 7, 2014, the date the ALJ found Plaintiff to be disabled.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Gilliam's v. Barnhart, 3 93 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual

functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id. "The ALJ is permitted to base its RFC determination on 'a non-examining physician's opinion *and* other medical evidence in the record.'" Barrows v. Colvin, No. C 13-4087-MWB, 2015 WL 1510159 at *15 (quoting from Willms v. Colvin, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 2013).

As indicated earlier, in his decision, the ALJ found that prior to January 7, 2014, the date Plaintiff became disabled, Plaintiff had the RFC to perform light work except he could perform frequent (rather than constant) rapid and repetitive flexion and extension of his bilateral wrists. He thereafter found that prior to January 7, 2014, Plaintiff was capable of performing his past relevant work as an inventory management specialist. (Doc. 14, p. 296).

Plaintiff maintains that it is unclear in the decision where the January 7, 2014 date comes from. The Court has noted the reports from Plaintiff's treating physicians in its credibility analysis above. In addition to those, on July 5, 2010, a Physical RFC Assessment was completed by non-examining consultant, Dr. Alice M. Davidson. (Doc. 14, pgs. 228-235). Dr. Davidson concluded that Plaintiff was capable of performing medium work with certain limitations. (Doc. 14, p. 229).

On January 6, 2014, Plaintiff was seen and evaluated by orthopedic surgeon, Dr. Ted Honghiran. (Doc. 14, p. 615). Dr. Honghiran reported that Plaintiff walked normally, had no limp, was able to dress and undress himself without help, was able to get on and off of the

examination table without help, was able to walk on his tiptoes and heels, and squat down. (Doc. 14, p. 616). His examination of Plaintiff's lumbar spine showed 60 degrees of flexion and side bending 10 degrees on both sides with no pain. Plaintiff had negative straight leg raise in both legs and had normal reflex and sensation. Dr. Honghiran's examination of the right and left shoulder showed complete range of motion in both shoulders; the examination of Plaintiff's right and left hand showed evidence of a tingling sensation in both hands with adequate grip strength on both sides; the examination of his foot and ankle showed complete range of motion with no swelling and no pain on range of motion; the examination of both wrists showed complete range of motion of the wrist joint with no swelling and no pain on range of motion, and the reflexes and sensations were intact. (Doc. 14, p. 616). Dr. Honghiran noted that x-rays of the thoracic spine showed evidence of normal thoracic spine with minimal scoliosis; x-rays of the lumbar spine showed evidence of minimal degenerative disk disease of L4-L5 and L5-S1 levels, and it appeared to be in good alignment with no severe arthritis present; and x-rays of the right wrist, right hand, left wrist, and left hand were normal. (Doc. 14, p. 616). Dr. Honghiran noted that Plaintiff indicated he would sign up for affordable health care in the near future, and once he got on with insurance, he would see the specialist in regards to his carpal tunnel syndrome. (Doc. 14, p. 617). He further concluded that Plaintiff should be able to work in a supervisory capacity.

    Dr. Honghiran also completed a Medical Source statement on January 6, 2014, basically concluding that Plaintiff would be able to frequently lift up to 50 pounds and occasionally lift up to 100 pounds; frequently carry up to 50 pounds and occasionally carry up to 100 pounds; sit for 2 hours, stand for 1 hour and walk for 1 hour at one time without interruption; sit for 4 hours, stand for 2 hours and walk for 2 hours total in a workday; and

walk 1 block without the use of a cane. (Doc. 14, pgs. 618-619). Dr. Honghiran also concluded Plaintiff could frequently reach, handle, finger, and feel with both hands; push/pull occasionally with both hands; frequently operate foot controls with both feet; frequently climb stairs and ramps, balance, stoop, kneel, crouch, and crawl; occasionally climb ladders or scaffolds; frequently operate a motor vehicle, be exposed to humidity and wetness, dust, odors, fumes and pulmonary irritants, extreme cold and heat, vibrations, and loud noise; and occasionally be exposed to unprotected heights and moving mechanical parts. (Doc. 14, pgs. 620-622).

On January 20, 2014, Plaintiff was seen by Dr. Shawn S. Miller, who reported that Plaintiff's shoulders showed abnormalities and limited range of motion. (Doc. 14, p. 633). He assessed Plaintiff with, inter alia, rotator cuff tendonitis and orthopedic disorders of the spine. (Doc. 14, p, 633). On April 21, 2014, Dr. John Jacobs reported that Plaintiff's exam was stable. (Doc. 14, p. 631). On May 5, 2014, Dr. Jacobs reported that Plaintiff's shoulder symptoms were weak when lifting things overhead, but no soft tissue swelling. (Doc. 14, p. 629)). Dr. Jacobs assessed Plaintiff with Type 2 diabetes mellitus with manifestations, hyperlipidemia, anxiety disorder NOS, carpal tunnel syndrome, and hypertension. (Doc. 14, 629). Plaintiff last saw Dr. Jacobs on August 21, 2014, who reported that Plaintiff had shoulder symptoms "pain with movement – arthralgias," and that the shoulders showed abnormalities – tender to palpation and pain with range of motion. (Doc. 14, p. 629). He assessed Plaintiff with rotator cuff tendonitis, type 2 diabetes mellitus with manifestations, esophageal reflux, arthritis, and hypertension. (Doc. 14, p. 629).

On March, 31, 2015, Plaintiff was seen and evaluated by neurologist, Dr. David Oberlander. (Doc. 14, p. 643). Upon examination, Plaintiff was reported as showing

moderate weakness in grips bilaterally, and his fine motor skills were impaired bilaterally. (Doc. 14, p. 650). Plaintiff also showed a marked sensory reduction to light touch and pin prick in the left and right index fingers, and positive Tinel and phalen sign was noted at the wrist bilaterally. (Doc. 14, p. 650). In addition, a nerve conduction study was performed on that date, and Dr. Oberlander indicated it showed severe, bilateral median nerve entrapment at the wrist: carpal tunnel syndrome. (Doc. 14, p. 650). Dr. Oberlander reported its severity was supported by fasiculations on EMG study, weakness in hands, and impairment of fine motor skills. (Doc. 14, p. 651). Dr. Oberlander gave the following impression:

> There is support for severe, bilateral median nerve entrapment of the wrist: severe bilateral carpal tunnel syndrome. The presence of fasiculations in the left and right APB muscles is indicative of a severe entrapment at the wrist.

(Doc. 14, p. 653). Dr. Oberlander also completed a Medical Source Statement, wherein he found Plaintiff had severe limitations. (Doc. 14, pgs. 643-647).

In his decision, the ALJ discussed both opinions of Dr. Hongrihan and Dr. Oberlander. (Doc. 14, p. 291). He gave Dr. Honghiran's opinion some weight, but was unable to give his RFC assessment any weight, "as it appears that he overestimated the claimant's ability to perform work, especially in the area of reaching, handling, fingering and pushing and pulling as is discussed in Dr. Oberlander's findings." (p. 291). The ALJ noted that Dr. Oberlander is a neurology specialist, and gave his findings significant weight. (Doc. 14, p. 291).

Dr. Oberlander's findings and opinion is clearly far more supportive of increased RFC restrictions than Dr. Honghiran's findings and opinion, and it is clear that the ALJ gave Plaintiff the benefit of using the earlier of these two examinations as the date the record supported increased RFC restrictions. In addition, as noted by Defendant, Plaintiff stopped

working in early 2008 because he was laid off when his employer did away with his job. (Doc. 14, pgs. 29, 31). Thereafter, Plaintiff testified that he looked for other employment, and received unemployment benefits until mid-2010, which is inconsistent with his alleged period of disability.

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's RFC determination, and the date the ALJ found Plaintiff became disabled – January 7, 2014.

### C. Failure to Fully and Fairly Develop the Record:

Plaintiff argues that the ALJ "should have sought further clarification from the Plaintiff's treating doctor concerning limitations, as directed by the Federal Court in this case." (Doc. 12, p. 17). In the Report and Recommendation filed on November 20, 2013, by the undersigned (Doc. 14, p. 386), the ALJ was directed to "more fully and fairly develop the record regarding Plaintiff's alleged carpal tunnel syndrome, and to "address interrogatories to either an examining or non-examining physician, asking that physician to review Plaintiff's medical records; to complete a RFC assessment regarding Plaintiff's capabilities during the time period in question; and to give the objective basis for his or her opinion so that an informed decision can be made regarding Plaintiff's ability to perform basic work activities on a sustained basis." (Doc. 14, p. 390). The undersigned also indicated that the ALJ may also order a consultative exam, in which the consultative examiner should be asked to review the medical evidence of record, perform a physical examination and appropriate testing needed to properly diagnose Plaintiff's condition and level of pain, and complete a medical assessment of Plaintiff's ability to perform work related activities. The ALJ was then directed

to re-evaluate Plaintiff's RFC and specifically list in a hypothetical to a VE any limitations that were indicated in the RFC assessment and supported by the evidence. (Doc. 14, p. 390).

In this case, subsequent to the Court's remand, Dr. Honghiran examined the Plaintiff and completed a Medical Source Statement, and Dr. Oberlander examined the Plaintiff and completed a Medical Source Statement. Both physicians carefully examined Plaintiff's carpal tunnel syndrome and gave their opinions. The Court believes this met the directives of the remand order, and that there were sufficient medical records before the ALJ for him to be able to make a decision.

Accordingly, the Court finds that the ALJ did not fail to fully and fairly develop the record in this case.

## IV. Conclusion:

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's partially unfavorable decision, wherein he concluded that prior to January 7, 2014, Plaintiff was capable of performing his past relevant work as a warehouse manager and inventory management specialist, and that with respect to Plaintiff's SSI application, on January 7, 2014, Plaintiff became disabled. Therefore, the decision is hereby affirmed. The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 16th day of August, 2016.

/s/ *Erin L. Setser*
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE